UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AZIZ SAFOUANE, et al.,

Plaintiffs,

v.

STEPHEN HASSETT, et al.,

Defendants.

CASE NO. C00-0621-JCC

ORDER

This matter comes before the Court on the State Defendants' Motion for Summary Judgment of Dismissal (Dkt. No. 281), the joinder in the motion by Defendants Molly Daggett and Lutheran Social Services ("LSS") and the King County Defendants (Dkt. Nos. 288, 290), Plaintiffs' Response in opposition (Dkt. No. 301), Defendants' Reply (Dkt. No. 306), and Plaintiffs' Surreply (Dkt. No. 310).[1] The Court has carefully considered these papers and the balance of relevant materials in the case file,

---

[1] Plaintiffs also filed a Motion to Accept for Filing Plaintiffs' Appendix to Surreply (Dkt. No. 313). In that motion, Plaintiffs ask that the Court consider certain exhibits that they filed subsequent to filing their Surreply. (*Id.*) They also ask that the Court order that they, as *pro se* litigants, be permitted to e-file proposed sealed documents. (*Id.*) It is not generally appropriate to file exhibits to a surreply, the purpose of which under the Local Rules is only to request to strike material contained in a reply brief. *See* Local Rules W.D. Wash. CR 7(g). However, because the Court finds the exhibits helpful in resolving the summary judgment motion and does not find that Defendants are prejudiced thereby, the Court will GRANT the motion (Dkt. No. 313) and accept for filing Plaintiffs' Appendix. The Court will not, however, exempt Plaintiffs from the Local Rule that requires *pro se* litigants to submit hard copies of documents to be filed under seal. *See* Local Rule CR 5(g)(7).

ORDER – 1

1 | and has determined that oral argument is not necessary. The Court hereby GRANTS the motion and rules as follows.

## I. BACKGROUND

As recounted in earlier orders, (*see, e.g.*, Dkt. No. 248), *pro se* Plaintiffs Aziz and Sarah Safouane initiated this action on April 10, 2000, bringing claims under 42 U.S.C. §§ 1983 and 1985(3) and supplemental state law claims against over one-hundred defendants in connection with a series of state court dependency proceedings following the death of one of their children in their home. (Compl. (Dkt. No. 2).) The pertinent underlying facts are as follows.

On September 29, 1994, Plaintiffs' twenty-two-month-old son died from a blunt trauma to his abdomen. (Third Am. Compl. ¶¶ 19, 20, 34, 41 (Dkt. No. 216)); *In re Dependency of M.I.S.*, 87 Wash. App. 1005, 1997 WL 435887, at *1 (Wash. Ct. App. Aug. 4, 1997). While Plaintiffs maintained that the injury was from a bicycle accident, (Third Am. Compl. ¶¶ 34, 42 (Dkt. No. 216)), the State of Washington filed a murder charge against Mr. Safouane in connection with the death and placed Plaintiffs' four surviving children, then aged five, four, two, and less than one year, in protective custody. (*Id.* ¶ 23); *In re Dependency of M.I.S.*, 1997 WL 435887, at *1. The criminal case against Mr. Safouane was set for trial on January 25, 1995; however, the State ultimately voluntarily dismissed the case before the jury was empaneled. (Third Am. Compl. ¶ 38 (Dkt. No. 216).) Nevertheless, the State proceeded with dependency and termination hearings. In June 1997, after a series of hearings, the state court ordered Plaintiffs' parental rights terminated as to the four oldest children and a fifth child, born in 1996. (*Id.* ¶ 92.) That decision was affirmed by the Washington Court of Appeals, and the Washington Supreme Court denied review. (*Id.* ¶ 110.) In addition, in November 2000, the state court terminated Plaintiffs' parental rights as to another of Plaintiffs' children, born in 1997. (*Id.* ¶ 115.) The State subsequently filed a petition to terminate Plaintiffs' parental rights as to an eighth child, born in 1999. (*Id.* at 116.) An order terminating Plaintiffs' parental rights as to that child was entered in June 2001. (Mot. 5 (Dkt. No. 281).) That order was also affirmed on appeal. (*Id.*)

ORDER – 2

In their federal court complaint, Plaintiffs alleged, *inter alia*[2], that the children had been abused while in foster care. (*See, e.g.*, Compl. ¶ 104 (Dkt. No. 2).) In a series of orders, the district court dismissed each of Plaintiffs' claims. Ultimately, the United States Court of Appeals for the Ninth Circuit affirmed most of those dismissals but vacated the dismissal of the § 1983 claims against the foster parents for failure to state a cause of action upon which relief can be granted. *Safouane v. Fleck*, 226 Fed. App'x 753, 767 (9th Cir. 2007). The district court had found that the foster parents were not state employees but "failed to consider whether the Safouanes had alleged sufficient facts in their pro se pleading to demonstrate that the foster parents were acting under color of state law[.]" *Id*. The Ninth Circuit instructed that:

> Upon remand, the district court should permit the Safouanes to attempt to amend their complaint to allege facts, if such exist, that would demonstrate that the foster parents were state actors under federal law, or private parties who willfully participated with state actors.

*Id*. In addition, the Ninth Circuit vacated the dismissals of LSS, which supervises foster homes in Washington State, and its employee social worker Molly Daggett, as well as the assistant attorneys general, the guardian ad litem ("GAL") case workers, the appointed counsel, and the social worker defendants, who, according to the Complaint, knew about the abuse of the children in foster care but did nothing to stop it. *Id*. at 768. As to these defendants, the Ninth Circuit vacated their dismissals "with respect to claims involving the children's abuse while in foster care" and explained that "[o]n remand, the district court should reconsider these claims in light of its resolution of the allegations that the foster parents deprived the Safouanes of their constitutional rights." *Id*. Stated differently, the Ninth Circuit vacated "the dismissal of the § 1983 claims arising out of the abuse by the foster parents to the extent they state a claim that the Safouanes were deprived of their constitutionally protected liberty interest in

---

[2]Plaintiffs brought sixteen causes of action, including § 1983 claims, claims of discrimination, unreasonable search and seizure, false arrest and imprisonment, malicious prosecution, free exercise of religion, defamation, negligence, abduction, assault, battery, and malpractice. (Compl. (Dkt. No. 2).)

ORDER – 3

the companionship and society of their children." *Id*. at 757.[3]

After remand, Plaintiffs filed a forty-six-page Third Amended Complaint. (Dkt. No. 216.) The case was thereafter transferred to the undersigned in May 2008. (Dkt. No. 242.) The Court ruled on a number of early motions, including granting a motion to dismiss certain of the foster parent and social worker Defendants. (Dkt. No. 246.) The case is now set for trial on December 7, 2009. (Dkt. No. 262.)

In the instant motion, the State Defendants (the assistant attorneys general and state social workers/supervisors), Molly Daggett and LSS, and the King County Defendants (court-appointed guardian ad litems Kwami Taha, Patricia Mustacich, Lucyle Wooden, and their appointed attorneys Rando Wick and Lori Irwin) ask the Court to dismiss on summary judgment Plaintiffs' § 1983 claims on grounds that: (1) Plaintiffs lack standing for want of any actual "injury in fact" caused by Defendants; (2) Plaintiffs have not established causation to support their § 1983 claims; (3) Plaintiffs have not established a deprivation of any constitutionally protected liberty interest; (4) even if they could show a deprivation, such right was not clearly established at the time of the alleged deprivation and therefore Defendants are entitled to qualified immunity; and (5) the § 1983 claims are time-barred. (Mot. 1 (Dkt. No. 281).)

Plaintiffs object to the motion on grounds that (1) the motion is premature because no discovery has been conducted; (2) Defendants have misidentified Plaintiffs' clearly established rights; (3) there are issues of material fact in dispute; (4) Defendants did not present proper declarations or supporting evidence to refute the Third Amended Complaint; (5) Plaintiffs' clearly established rights were violated

---

[3]Further, the Ninth Circuit vacated the district court's order dismissing the claim of malicious prosecution of Mrs. Safouane for the crime of Obstructing a Law Enforcement Officer under WASH. REV. CODE § 9A.76.020. *Id*. at 765. Specifically, the panel held that "the district court erred in concluding that the King County police officers had demonstrated that they had probable cause to obtain the prosecution of Sarah Safouane under Washington law" because the court failed to apply the standard established by *Peasley v. Puget Sound Tug & Barge Co.*, 125 P.2d 681, 688 (Wash. 1942), in determining whether Plaintiffs' prima facie case was properly rebutted by Defendants. *Id*. The instant summary judgment motion does not address this claim.

ORDER – 4

1 by Defendants, so the State Defendants are not entitled to qualified immunity; and (6) their § 1983 claim is not time-barred. (Resp. 5–6, 16–17 (Dkt. No. 301).) Both sides have also requested that the Court strike certain documents from the opposing parties' submissions. (Reply 8–9 (Dkt. No. 306); Surreply 1–3 (Dkt. No. 310).)

## II. APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the moving party meets this initial burden, then the party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to a summary judgment motion, . . . the [non-moving party] can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, . . . which for the purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); FED. R. CIV. P. 56(e). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

## III. ANALYSIS

As a preliminary matter, the Court finds it helpful to clarify the right at issue in the instant motion. The Ninth Circuit expressly vacated the district court's dismissal of the § 1983 claims only to the extent that they both "aris[e] out of the abuse by the foster parents" and "state a claim that the

ORDER – 5

Safouanes were deprived of their constitutionally protected liberty interest in the companionship and society of their children." *Safouane*, 226 Fed. App'x at 757. A constitutionally protected liberty interest entitles one to both substantive and procedural due process before the government interferes with that right.[4] Based on the Ninth Circuit opinion liberally construing *pro se* Plaintiffs' Complaint, and construing Plaintiffs' Third Amended Complaint in accordance with the limited remand, the Court articulates Plaintiffs' surviving § 1983 claims as follows: Plaintiffs assert that starting on September 29, 1994, when the State placed Plaintiffs' four surviving children in protective custody, Defendants purposefully deprived them of both substantive and procedural due process in infringing their liberty interest in the companionship and society of their children by being aware of alleged abuse of the children in foster care and allowing it to continue or by participating in it. (*See* Third Am. Compl. ¶ 129 (Dkt. No. 216)); *Safouane*, 226 Fed. App'x at 766–68.

The Court will address Defendants' arguments below.

**A.     Statute of Limitations**

Defendants argue that Plaintiffs' § 1983 claims are time-barred because Plaintiffs were aware of the allegations of abuse more than three years before they filed their § 1983 claims on April 10, 2000. (Mot. 23 (Dkt. No. 281).) If the claims are time-barred, then the Court need go no further; therefore, the Court will address this argument first. The Ninth Circuit already affirmed the district court's dismissal of "[c]ertain of the Safouanes' claims arising from events that occurred before April 10, 1997[.]"

---

[4]For example, in *Carver v. Lehman*, the Ninth Circuit explained that:

> The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Our analysis of due process claims proceeds in two steps. [T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.

558 F.3d 869, 872 (9th Cir. 2009) (internal citation omitted).

ORDER – 6

*Safouane*, 226 Fed. App'x at 759. However, the court of appeals could "not affirm the district court's dismissal of the Safouanes' claims regarding the foster parents on the statute of limitations ground" based on the record on appeal. *Id*. at 768 n.1. The panel instructed, however, that "[t]he parties are free to pursue this issue on remand." *Id*.

"42 U.S.C. § 1983 does not contain its own statute of limitations." *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Accordingly, "[s]tate law governs the statute of limitations period for § 1983 suits and closely related questions of tolling." *Douglas v. Noelle*, __ F.3d __, 2009 WL 1564235, at *6 (9th Cir. June 5, 2009) (*citing Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999)); *see also Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law."). As noted, "Section 1983 claims are characterized as personal injury suits for statute of limitations purposes." *Douglas*, 2009 WL 1564235, at *6 (*citing Davis v. Harvey*, 789 F.2d 1332, 1333 (9th Cir. 1986)). Washington's statute of limitations for personal injury suits is three years. WASH. REV. CODE § 4.16.080(2). In addition, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Douglas*, 2009 WL 1564235, at *6 (*citing Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000)). Therefore, Plaintiffs may not recover for constitutional violations that they knew about, or should have known about, before April 10, 1997.

Although the allegations of abuse, scattered throughout the Complaint, are at times vague, all of the specific alleged instances of abuses in this case occurred before April 10, 1997. In particular, Plaintiffs allege that the three oldest children were "subjected to numerous, lengthy, and ongoing forms of torture and coercive interrogation by police and the criminal case prosecutor" during the first month they were in foster care in 1994. (Third Am. Compl. ¶ 30 (Dkt. No. 216).) In addition, they allege that

ORDER – 7

between September 1994 and January 1995,[5] "Woodward, Hassett, Scott, and Frank Martini, a non-Muslim foster parent, assisted the prosecutor and police detectives for many months prior to the start of the criminal case by . . . abuse, neglect, and harm of the parents' children and threats that the children would never see each other or their parents again if they refused to state the false allegations against their father." (*Id.* ¶ 37.) They also allege that in 1995, "Hassett, Woodward, Fisher, Karfeld, Taha, Wooden, and Wick . . . allowed the children to be tortured, severely abused, neglected, and harmed while in foster care, and to be forced to take unneeded medication and therapy in order to sedate their protests while in foster care. (*Id.* ¶ 68–69.) Plaintiffs further allege that "DSHS/DCFS, Woodward, Scott, and Hassett deprived the children of their basic needs, and endangered their health, safety, and welfare by restraining them in foster care in the Martinis' home from the day they were seized on September 29, 1994 until the end of October 1994. The children were abused, neglected, and harmed by the Martinis by . . . verbal and physical threats to force dogs on them and denial of food and basic hygiene." (*Id.* ¶ 70.) Plaintiffs also allege that DSHS/DCFS "kept the children from their mother from September 29, 1994 until on or about April 3, 1995 so she would not know the children were being abused, neglected, harmed and tortured in efforts to coerce them to make false statements against their parents, and to force them to reject and hate their parents' chosen religious belief." (*Id.* at ¶ 72.)[6]

---

[5]The Third Amended Complaint erroneously substitutes the years 2004 and 2005 for 1994 and 1995. (Third Am. Compl. ¶ 37 (Dkt. No. 216).) Plaintiffs acknowledge that this was an error, and that the years should read 1994 and 1995. (Resp. 17 n.24 (Dkt. No. 301).)

[6]Plaintiffs also allege that at an unspecified time in "early April of 1997 . . . the parents and an independent social worker . . . directly observed abuse, neglect, and harm to the children of foster care[.]" (Third Am. Compl. ¶ 67 (Dkt. No. 216).) In addition, they allege that numerous foster parents "tortured, abused, neglected, and harmed the children on numerous occasions" without specifying a time frame. (*Id.* ¶ 73.) They further allege that at an unspecified time, certain Defendants concealed "information of severe developmental delays of [one of the children, E.] and the harm to the other children caused by the severe abuse and neglect in foster care." (*Id.* ¶ 77.) However, Plaintiffs do not specifically refute, in their Response to summary judgment, that the abuse allegedly occurred before April 10, 1997. (*See* Resp. 16–18 (Dkt. No. 301).) Rather, they argue that Defendants concealed the alleged mistreatment until May 1997, and that, therefore, they are entitled to equitable tolling. (*Id.* at 17.)

ORDER – 8

The question, therefore, is whether Plaintiffs knew or should have known of these alleged abuses before April 10, 1997. Plaintiffs' Third Amended Complaint, filed after remand, reveals that Plaintiffs were aware earlier than April 10, 1997, that the children may have been abused in foster care. For instance, the Complaint, in pertinent part, reads:

> In early February of 1996, a review hearing was held before [Judge] Fleck regarding the children where the parents presented testimony from an independent social worker . . . that she had received information that some of the children had possibly been abused, neglected, and harmed in foster care. Hassett, Taha, Woodward, and Wick stated in open court for the first time that they knew of the allegations of abuse, neglect, and harm, had investigated the allegations, but found nothing. The parents specifically requested more information about the allegations and the investigation thereof . . . , but their requests were denied.

(Third Am. Compl. ¶ 55 (Dkt. No. 216 at 17–18).) The Complaint also states that:

> A fact-finding trial on the involuntary parental rights termination petitions was held beginning March 13, 1997. The parents learned during the first week of the termination proceedings that all five of their children might actually have possibly been abused, neglected, and harmed while in foster care despite denials by Karfeld, Woodward, Scott, Fisher, Taha, Wick, and Hassett that no such abuse, neglect, or harm had occurred. Said defendants apparently knew of possible abuse, neglect, and harm of some of the children, but had not notified the court or the parents and had not reported it to law enforcement for investigation.

(*Id.* ¶ 64.)

While Plaintiffs may not have had all the details they requested at that point, Plaintiffs knew enough about their potential claims to be able to relate some specifics to their then-attorney. In a letter from Plaintiffs' former attorney, Gary A. Preble, to counsel for the State, dated April 9, 1997, Mr. Preble explains that Plaintiffs had given him information about alleged incidents of abuse. (Preble letter (Dkt. No. 283 at 35–36); Preble letter attached to Parents' Declaration (Dkt. No. 307-2 at 4).) The letter states, in pertinent part:

> [W]e are dealing with clear issues of abuse and neglect. . . . Specifically, M. has been physically, verbally and emotionally abused by at least his foster father. E. is in a state of neglect such that he may have sustained permanent damage. As the Safouanes have related to me, his teeth are rotting and there is a flat spot on his head. In addition, the Safouanes see indications that he is developmentally delayed. . . . Moreover, M. came to visitation with a bump on his head for which he had several different explanations. . . . [Fisher] knows that under her watch these children have been abused and neglected.

ORDER – 9

(*Id.*) This letter evinces that Plaintiffs knew of at least some alleged abuse of the children in foster care before April 10, 1997.[7] In addition, according to exhibits filed by Plaintiffs in support of their Surreply, Plaintiffs filed a Declaration in state court on March 24, 1997, that declares that they received discovery at various points that month that "include[d] abuse and neglect reports against a . . . foster parent" and that "identifie[d] specific harm that has come to our children as a result of DSHS' and the GAL's actions and inactions[.]" (Decl. of Parents (Dkt. No. 314 at 1).) In particular, the documents show that as of March 14, 1997, Plaintiffs, through their attorney, knew that Fisher and Karfeld were aware about allegations of abuse or neglect of N., one of the children in foster care. (Dkt. No. 314 at 18–21.) The documents also show that as of March 21, 1997, Plaintiffs knew LSS and Daggett were aware in May 1996 of allegations of sexual abuse of one of the children in foster care. (Dkt. No. 314 at 23–25.) By March 21, 1997, Plaintiffs had medical information about E.'s developmental issues, including some of the caseworker's and the foster mother's decision-making regarding treatment. (Dkt. No. 314 at 26.)

Nonetheless, Plaintiffs argue that they are entitled to an equitable tolling of the statute of limitations, claiming that Defendants fraudulently concealed the facts surrounding the alleged abuse. (Resp. 16–18 (Dkt. No. 301).) "It is well established law that federal courts must apply not only the appropriate state statute of limitations, but also the applicable state rule for tolling that statute of limitations for actions brought under § 1983." *De Luna v. Farris*, 841 F.2d 312, 314 (9th Cir. 1988).

---

[7]Plaintiffs object to the admissibility of the Preble letter on grounds that it was not authenticated. (Resp. 17 n.25 (Dkt. No. 301).) Defendants initially filed the letter as an attachment to the Declaration of Robert Hargreaves, the State Defendants' attorney, in support of their motion. Plaintiffs argue that Mr. Hargreaves cannot authenticate the document because he did not observe that Mr. Preble actually wrote the letter. However, in reply to Plaintiffs' concerns about authenticity, Defendants submitted a supplemental Declaration of Robert Hargreaves, which attaches the letter again, this time showing that the letter was filed by Plaintiffs themselves as an attachment to their own Declaration in the King County Superior Court, Juvenile Division. The Safouanes' Declaration, dated April 28, 1997, represents that the letter was sent by their attorney to State counsel. (Decl. of Parents (Dkt. No. 307-2).) In their Surreply, Plaintiffs ask the Court to strike the supplemental declaration on grounds that it contains new argument and evidence that should have been included with the initial motion. (Surreply 1 (Dkt. No. 310).) The Court will not strike the letter or the supplemental Hargreaves Declaration. Defendants were permitted to reply to Plaintiffs' concerns about authenticity raised in the Response.

ORDER – 10

Under Washington case law, "[e]quitable tolling is a legal doctrine that allows a claim to proceed when justice requires it, even though it would normally be barred by a statute of limitations." *Trotzer v. Vig*, 203 P.3d 1056, 1062 n.9 (Wash. Ct. App. 2009) (*citing Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998)). Washington courts "permit equitable tolling only sparingly." *Id*. at 1062 (citations omitted). "The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." *Id*. (citation omitted.) For instance, where a parent concealed the removal of her child to another country, the other parent's claim under the Hague Convention was equitably tolled during the period when he could not have known that the child was removed. *See Perez v. Garcia*, 198 P.3d 539, 545 (Wash. Ct. App. 2009).

Here, however, despite Plaintiffs' allegations that Defendants concealed the facts regarding the alleged abuse, the Complaint, the Preble letter, and Plaintiffs' Declaration of March 24, 1997, make clear that Plaintiffs *did* know before April 10, 1997, that there were various allegations of abuse, and that Defendants were aware of them. As outlined above, as early as February 1996, Plaintiffs heard testimony in court from some of the Defendants, and testimony from their own witness, giving them notice that the children may have been abused in foster care. (Third Am. Compl. ¶ 55 (Dkt. No. 216).) Plaintiffs argue that they did not have all the discovery they requested until late April and May 1997. (Resp. 17 (Dkt. No. 301); Third Am. Compl. ¶ 68 (Dkt. No. 216).) However, given that Plaintiffs were aware, certainly in March 1997, that Defendants knew of possible abuse but "had not notified the court or the parents and had not reported it to law enforcement," (Third Am. Compl. ¶ 64 (Dkt. No. 216)), Plaintiffs could not have justifiably waited until April 10, 2000, to file their § 1983 claims arising from the allegations of abuse based on deception or false assurances by Defendants. Given these circumstances, the Court finds that Plaintiffs are not entitled to equitable tolling of the statute of limitations.

**B.     Qualified Immunity**

Even if they were not time-barred, the Court would still be required to dismiss Plaintiffs' § 1983

ORDER – 11

claims against the State Defendants, and those County Defendants who have joined the motion, because those defendants are entitled to qualified immunity.

"Qualified immunity protects government officials from civil liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cousins v. Lockyer*, __ F.3d __, 2009 WL 1652208, at *4 (9th Cir. June 15, 2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Federal courts consider qualified immunity using the two-step inquiry set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). *Id*.

> First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson v. Callahan*, 129 S. Ct. 808, 815–16 (2009) (internal citations omitted) (discussing the *Saucier* two-step analysis)[8]; *see also Malley v. Briggs*, 475 U.S. 335, 341(1986) (qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

Here, the Ninth Circuit has already held that Plaintiffs have articulated a possible violation of a constitutional right, i.e., the violation, arising out of the allegations of abuse, of Plaintiffs' "constitutionally protected liberty interest in the companionship and society of their children." *Safouane*, 226 Fed. App'x 753, 757 (9th Cir. 2007). The Ninth Circuit cites *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985), for the proposition that such a right exists. *Kelson* holds that "parents possess a constitutionally protected liberty interest in the companionship and society of their child, deprivation of which is actionable under section 1983." *Kelson*, 767 F.2d at 652. However, *Kelson* involved the rights of *custodial* parents, which the Safouanes were *not* at the time of Defendants' alleged misconduct. The Ninth Circuit has also held that "non-custodial parents with court-ordered visitation rights have a liberty interest in the companionship, care, custody, and management of their

---

[8]The Supreme Court recently modified *Saucier*, noting that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 129 S. Ct. at 818.

ORDER – 12

children," albeit "unambiguously lesser in magnitude than that of a parent with full legal custody." *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006). Therefore, it is settled that, at least to some degree, non-custodial parents with visitation rights, like the Safouanes at the time of the alleged violations, do have a liberty interest in the companionship and society of their children.

As such, the Court must now determine whether Plaintiffs' liberty interest was "clearly established" at the time of Defendants' alleged misconduct.

> The inquiry into whether a right is clearly established must be undertaken in light of the specific context of the case. In addition, for a right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Cousins*, 2009 WL 1652208, at *4 (internal citation and quotation omitted). "[I]f the parameters of the right are not clearly established by case law, the official is entitled to qualified immunity." *Tibbetts v. Kulongoski*, 567 F.3d 529, 538 (9th Cir. 2009) (*citing Hunter v. Bryant*, 502 U.S. 224, 226 (1991)). "While the right the official is alleged to have violated must have been 'clearly established' in a 'particularized' sense, this is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in light of the pre-existing law the unlawfulness must be apparent." *Kruse v. Hawai'i*, 68 F.3d 331, 336 (9th Cir. 1995) (internal quotation and citation omitted).

The Court is not persuaded that the contours of the right at issue here were sufficiently clear that reasonable officials would have understood that decisions they made with respect to the foster parents' alleged abuse potentially violated Plaintiffs' liberty interests in the companionship and society of their children. First, as a general proposition, the liberty interest of non-custodial parents in the companionship and society of their children was not a clearly established right at the time of the alleged deprivations. In *Brittain v. Hansen*, a 2006 opinion, the Ninth Circuit recognized that it had "not had occasion to decide whether parents who have visitation rights, but lack legal custody, have a similar liberty interest" as custodial parents in the companionship and society of their children. *Brittain*, 451

ORDER – 13

F.3d at 992. Although the panel ultimately concluded that such a right does exist, to a lesser magnitude than that of custodial parents, this right was not specifically made clear under Ninth Circuit law during the 1990s when the deprivations allegedly occurred.

Second, the case law does not clearly establish that this right may be violated by an official's actions or inactions with respect to a foster parent's abuse of a child. The dissent by Judge Rymer in the unpublished Ninth Circuit opinion remanding this case highlights the fact that previous cases defining the contours of parents' liberty interests in the companionship and society of their children "all involve the *termination of parental contact* with the child by state court order, death, deportation, long-term detention of the child, or the like." *Safouane*, 226 Fed. App'x at 769 (Rymer, J., dissenting). None of those cases are apposite here. The Court has found no cases discussing parents' liberty interests in the companionship and society of their children—let alone non-custodial parents' lesser such rights—that would make clear to reasonable officials that decisions they made with respect to the investigation or handling of allegations of foster parents' abuse could violate such interests. Indeed, it is not even clear to all the Ninth Circuit jurists on the *Safouane* panel "how the foster parents' alleged physical abuse of the children could have deprived the Safouanes of their parental liberty interest in companionship and society with the children," *id*. at 768, in part because no guidance is provided in Ninth Circuit precedent.

The Court finds that the contours of Plaintiffs' liberty interest were not sufficiently clear that a reasonable official would have understood at the time of the alleged deprivations that the actions or inactions alleged herein violate that right. Accordingly, qualified immunity protects the State and King County Defendants[9] in the decisions they made with respect to the allegations of abuse of the children to

---

[9]Defendants Molly Daggett and LSS argue, without citing any authority, that because of their contractual relationship with the State for the supervision of the foster homes, the same reasons as those contained in the State Defendants' motion, which presumably would include the qualified immunity argument, also entitle them to summary judgment dismissal. (Joinder (Dkt. No. 288).) Although at least one non-Ninth Circuit case has found qualified immunity to apply to LSS and its employee social workers in a case involving termination of parental rights, *see Bartell v. Lohiser*, 12 F. Supp. 2d 640, 645–47 (E.D. Mich. 1998), it is not clear that the Ninth Circuit would find qualified immunity applies to

ORDER – 14

the extent that such decisions allegedly impinged on Plaintiffs' rights to the companionship and society of their children.[10]

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the State Defendants' Motion for Summary Judgment of Dismissal (Dkt. No. 281). Accordingly, the following Defendants are dismissed from this action: the State Defendants (the assistant attorneys general and state social workers/supervisors), Molly Daggett and LSS, and the King County Defendants who joined the motion (court-appointed guardian ad litems Kwami Taha, Patricia Mustacich, Lucyle Wooden, and their appointed attorneys Rando Wick and Lori Irwin). Based on the dismissals of these Defendants, the following motions are hereby DENIED as MOOT: Plaintiffs' Second Motion for Protective Order (Dkt. No. 315), Plaintiffs' Motion to Compel Discovery From Defendant Molly Daggett (Dkt. No. 318), the State Defendants' Motion to Stay Discovery Pending the Court's Ruling on Qualified Immunity (Dkt.

---

these private Defendants. *See Jensen v. Lane County*, 222 F.3d 570, 578 (9th Cir. 2000) (distinguishing *Bartell* on its facts in holding that qualified immunity did not apply to a private psychiatrist who performed contract services for the county); *Halvorsen v. Baird*, 146 F.3d 680, 685–86 (9th Cir. 1998) (holding that a private non-profit firm providing detoxification services pursuant to a municipal contract did not enjoy qualified immunity from § 1983 liability). However, the parties have not briefed this issue, and the Court declines to decide it. Nevertheless, the claims against Daggett and LSS are still time-barred, as described above.

[10]Plaintiffs argue that the summary judgment motion was premature because "the discovery cutoff is not until August, and the due date for filing dispositive motions is not until September[.]" (Resp. 4 (Dkt. No. 301).) "Federal Rule of Civil Procedure 56(f) provides that if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). However, "[i]n making a Rule 56(f) motion, a party opposing summary judgment must make clear what information is sought and how it would preclude summary judgment." *Id*. (internal quotations and citation omitted). Plaintiffs have not shown by affidavit how any missing discovery would preclude summary judgment on the statute of limitations or qualified immunity issues. Further, questions of qualified immunity are best resolved as early as possible in the litigation. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1089 (9th Cir. 2009).

ORDER – 15

No. 320), Molly Daggett and LSS's Motion for Summary Judgment (Dkt. No. 326), and Motion for a Protective Order by Molly Daggett and LSS (Dkt. No. 334).

DATED this 30th day of June, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 16